**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| PIER NIEDDU, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. 4:12-cv-02726 |
| vs. § | |
| § | |
| LIFE TIME FITNESS, INC., LTF CLUB § | |
| MANAGEMENT CO., LLC, and § | |
| LTF CLUB OPERATIONS CO., INC., § | |
| § | |
| Defendants. § | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

In Defendants' initial brief, Life Time Fitness, Inc., LTF Club Management Co., LLC, and LTF Club Operations Co., Inc. (collectively "LTF" or the "Company") demonstrated numerous legal and factual deficiencies with Plaintiff's allegations that LTF somehow violated the federal Fair Labor Standards Act ("FLSA").  As discussed below, in an effort to salvage his fatally flawed claims, Plaintiff's response ignores relevant and controlling case law, relies upon inapposite authority, mischaracterizes the evidence, and ultimately creates a range of "straw man" arguments to distract from his meritless assertions.  Such tactics cannot suffice to defeat summary judgment here.  As Plaintiff fails to proffer any evidence sufficient to create a material factual issue with regard to any of the claims asserted, LTF's motion must be granted.

Plaintiff's response relies heavily on a 50-year-old case from the Second Circuit, *Caserta v. Home Lines Agency, Inc.*, the holding of which Plaintiff disingenuously presents as an "undisputed fact."  According to Plaintiff, under *Caserta*, LTF somehow should be held strictly liable for Plaintiff's own decision to blatantly defy copious Company policies, as well as *his own job description*, in failing to accurately report his time.  In making this argument, Plaintiff disregards the Fifth Circuit's long-standing position that employees are estopped from claiming they worked more hours than those reported in their time sheets unless the employer knew or had reason to believe that the reported information was inaccurate.  This estoppel rule is consistent with the decision in *White v. Baptist Memorial Health Care Corp.* – which the Supreme Court recently declined to review – holding that, under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow the established process.  As the controlling law here makes clear, employees such as Plaintiff may not thwart their employers' ability to

comply with the FLSA by disregarding clear timekeeping policies – such as those LTF promulgated and put into practice – and subsequently recover for unpaid overtime.

Plaintiff's response goes on to assert that LTF somehow had both actual and constructive knowledge that Plaintiff was working "overtime" hours, citing to a bevy of inapposite cases in which supervisors – unlike the Department Heads here – observed or received reports of overtime hours worked.  Plaintiff ultimately fails to address in any way the undisputed evidence (including his own testimony) that his supervisors in fact were in no position to track employee hours, let alone know if and when Plaintiff was working hours beyond his regularly scheduled shifts.  Although Plaintiff suggests that "red flags," such as holes in his time records, should have alerted LTF that he was working overtime, as LTF established in its initial brief, it had no duty to investigate Plaintiff's time records where there was no indication that Plaintiff was working beyond his normal hours.  As this Court previously made clear, Plaintiff simply has not "allege[d] facts or provide[d] evidence showing that [LTF] knew, actually or constructively, or that it should have known by watching hair stylists in the workplace, about [Plaintiff's]… alleged unrecorded work time."  (ECF No. 42, September 30 Order at 40.)

In a last-ditch effort to fabricate a factual dispute regarding LTF's reasonable reliance on Plaintiff to truthfully report his time, Plaintiff grossly mischaracterizes the evidence.  As a significant example, Plaintiff suggests that one of his supervisors, Francisco Fuentes, somehow *prevented* him from following LTF's clear time reporting procedures by *threatening him with discharge*.  The record here belies any such assertion.  Plaintiff's own testimony shows that, at most, Fuentes (only one of six different supervisors to whom Plaintiff reported during his employment) told him "not to worry" about clocking in or out because he was a commissioned employee.  This statement cannot in any way be deemed a "mandate" not to report time under

threat of adverse action. Indeed, Plaintiff's deposition testimony shows that – contrary to believing he might be fired if he recorded his time – he was *well aware* that LTF's policies unequivocally stated that commissioned employees *must* record all hours worked to ensure that they receive proper payment under the FLSA. Furthermore, Plaintiff's own time records show that he in fact continued to clock in and out of work during the period when he reported to Fuentes. In short, the undisputed evidence here shows that Plaintiff plainly knew – *even during the time that he reported to Fuentes* – that he should clock in and out of work, but he instead elected to engage in haphazard time reporting practices in defiance of Company policies. In light of the foregoing, no reasonable jury could conclude that LTF somehow prevented or discouraged Plaintiff from accurately tracking his time.

Finally – attempting to distract from the numerous fatal deficiencies with his claims – Plaintiff's response sets forth a number of "straw man" arguments, which confusingly center primarily on the irrelevant holding in *Anderson v. Mt. Clemens Pottery Co*. For example, Plaintiff asserts that "Defendants argue that Plaintiff bears the burden of proving with definite and certain evidence that he performed work for which he was not properly compensated," subsequently discussing *Mt. Clemens* and the "problem of how to determine how many hours have been worked 'off the clock.'" (Pl.'s Resp. at 16-17.) LTF makes no such argument. Indeed, LTF's initial brief *does not even address* the *Mt. Clemens Pottery* test, which Plaintiff confusingly addresses at great length, as this "test" – which considers whether the speculative nature of damages precludes the awarding of damages in FLSA cases – is inapplicable here.

The issue in this case is not whether Plaintiff can prove *how many* "overtime" hours he worked, but rather whether LTF knew or should have known that Plaintiff was working unrecorded hours and, in turn, whether LTF complied with the exemption requirements of the

FLSA's Section 7(i). As set forth above, the evidence here plainly shows that LTF had no such actual or constructive knowledge. Any arguments related to *Mt. Clemens Pottery* are irrelevant and serve only to distract from the foregoing key issue.

In sum, based on the undisputed evidence here, Plaintiff has not raised a material factual issue on any of the claims asserted. Plaintiff's response, which addresses an array of inapposite and irrelevant cases and arguments, does nothing to rectify his fatally deficient claims. Accordingly, as discussed further below, LTF's motion for summary judgment should be granted.

## II. CLARIFICATION OF RELEVANT BACKGROUND FACTS

Plaintiff's response purports to present an overview of the relevant "Procedural and Factual Background" here, which is in fact a confusing conglomeration of legal conclusions, argument, and inaccurate and unsubstantiated assertions that have no reasonable foundation in the record evidence. While the Court must, for purposes of the instant motion, resolve all disputed facts in Plaintiff's favor, as the nonmoving party, Plaintiff must present more than a scintilla of evidence in support of his claims and "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (citations omitted). Similarly, Plaintiff may not defeat LTF's motion by relying on hearsay, conclusions, unsubstantiated assertions, conjecture or his own subjective beliefs. *Bodenheimer v. PPG Indust., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 96-97 (5th Cir. 1991). In light of this well settled law, LTF wishes to draw the Court's attention to, and clarify the record regarding, specific contentions that Plaintiff attempts to pass off as "fact," but which are wholly unsupported by the credible evidence.

### A. Plaintiff Inappropriately Sets Forth Legal Conclusions as Undisputed Facts.

Plaintiff begins the "Procedural and Factual Background" section of his response with a litany of legal conclusions, which he inappropriately presents as undisputed "facts." (*See* Pl.'s Resp. at 3-6.) For example, as part of his purported factual recitations, Plaintiff discusses the *Caserta* decision, which he asserts stands for the proposition that "an employer cannot argue that its timekeeping obligations rest on its employees …." (*See id.* at 4 n.13 & 5-6 (citing *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959).) Plaintiff next presents as an "undisputed fact" his assertion that in reasonably relying on Plaintiff to accurately report his hours in accordance with Company policies, LTF somehow violated *Caserta's* holding that an employer may not "pass its time keeping obligation to its employees." (*See id.*)

In making these assertions, Plaintiff not only confounds fact and law, but he also fails to acknowledge LTF's cited authority showing that in the Fifth Circuit, employees are estopped from claiming that they worked more hours than they reported unless "the employer knew or had reason to believe that the reported information was inaccurate." *See Brumbelow v. Quality Mills, Inc.,* 462 F.2d 1324, 1327 (5th Cir. 1972). As discussed in LTF's initial brief, and as further elaborated below, the undisputed evidence here shows that Plaintiff must be estopped from claiming minimum wage and/or overtime violations under applicable law. (*See* ECF No. 43 at 6-10, 19-25.) This is so, because LTF had reasonable time-reporting policies and procedures in place, and it had no actual or constructive knowledge that Plaintiff willfully chose not to follow these policies and procedures. (*See id.* (citing, among other cases, *White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. Nov. 6, 2012), *certiorari denied by* 2013 WL 3865860 (U.S. Oct 7, 2013)).) Plaintiff's effort to cast his legal conclusions – which ultimately are not in line with mandatory authority governing the issues here – as part of the underlying factual background should not be countenanced.

### B. Plaintiff's Suggestion that He Had Reason to Fear He Would Be Discharged If He Accurately Reported His Hours Is Belied by the Record Evidence.

In addition to improperly styling legal argument as "fact," Plaintiff's purported "Procedural and Factual Background" section grossly mischaracterizes the record evidence in a number of significant ways. For example, Plaintiff's response suggests that his supervisor Fuentes somehow *prevented* him from following LTF's clear time reporting procedures by *threatening him with discharge*, asserting as follows: "Defendants argue that Plaintiff should have ignored his manager's [alleged] instructions [not to report his time] – *likely resulting in his termination*." (Pl.'s Resp. at 6 (emphasis added).) As noted above, the record here belies any claim that Fuentes – or any other Department Head – ever threatened Plaintiff with discharge if he recorded his work hours or otherwise sought to prevent him from reporting his time. Indeed, as this Court previously recognized, Plaintiff's own testimony shows that, at most, only one of no less than *six different supervisors* allegedly told him "not to worry" about clocking in or clocking out because he was a commissioned employee. (*See* Pl. Dep. 88-90; *see also* ECF No. 42, September 30 Order at 40 (noting that Plaintiff "testified during his deposition that the *only* manager that ever told him not to worry about clocking in and out was Francisco Fuentes." (emphasis in original)).)[1] The evidence here further shows that Plaintiff did not view any such statement as a "mandate" not to report his time under threat of discharge (or any other adverse action).

---

[1] As explained in LTF's initial brief, Plaintiff reported to six different individuals during his tenure with LTF. (*See* ECF No. 43 at 10 n.4.) Plaintiff reported to Fuentes from April 20, 2010 through July 31, 2011. (*See id.* (citing Yanez Aff. ¶ 7).) Thereafter, Plaintiff reported to five different supervisors for the period from August 1, 2011 through the date of his discharge for misconduct in March of 2012. (*See id.* (citing Yanez Aff. ¶¶ 7, 12).) Despite this wide array of supervisors, Plaintiff cannot recall a *single specific supervisor* aside from Fuentes who allegedly told him that he need not report his work time. (*See* Pl. Dep. 88-90.)

As an initial matter, Plaintiff admits that he knew LTF's policies unequivocally stated that commissioned employees *must* record all hours worked to ensure that they receive proper payment under the FLSA.  (*See* ECF 43 at 6-9.)  As set forth in LTF's initial brief, the Company's policies included the following clear and detailed terms regarding time recording expectations:

- LTF's Timekeeping policy specifically provides that each hourly and commissioned employee is responsible for accurately and completely reporting all time worked, emphasizing that "[f]ederal and state laws require an accurate record of time worked by hourly and commissioned [employees] in order to appropriately calculate pay and benefits."  (*See* Weber Aff. ¶ 5 & Ex. A.)

- LTF's Timekeeping policy explains that all hourly and commissioned employees must accurately record the time they begin and end all work – including the beginning and end of any split shifts, departures from work for personal reasons, or unpaid meal breaks – by punching in and out of the KRONOS system.  (*See id.* ¶ 6 & Ex. A.)

- LTF's Timekeeping policy clarifies that "time worked" includes all of the time employees actually spend performing job-related duties, as well as any paid breaks, in accordance with applicable law.  (*See id.* ¶ 8 & Ex. A.)

- LTF's Accuracy of Company Records policy mandates that employees ensure all data included in any LTF records is complete and accurate, emphasizing that "[r]ecording false, inaccurate or incorrect information or data is grounds for discipline, up to and including termination."  (*See id.* ¶ 11 & Ex. C.)

In his deposition, Plaintiff did not dispute that the policies outlined above accurately reflect LTF's expectations concerning time reporting.  (*See* Pl. Dep. 90:4-16, 109:12-19.)

Beyond the foregoing general policies, as explained previously, LTF also made proper timekeeping a *specific requirement* of Plaintiff's Stylist job.  (*See* Yanez Aff. ¶ 5 & Ex. A.) LTF's Stylist Position Description lists "[p]unches in and out of Kronos" and "[a]dheres to company policies and procedures" as *specific responsibilities* for all hair stylist employees.  (*See id.*)  In light of these copious and clear directives unequivocally requiring Plaintiff to accurately record his time, Plaintiff's newly minted suggestion that he somehow had reason to believe he

-7-

would *lose his job* if he did in fact report his hours simply cannot stand. *See*, *e.g.*, *Bodenheimer.*, 5 F.3d at 959 (holding that a party may not defeat a motion for summary judgment by relying on unsubstantiated assertions, conjecture or subjective beliefs).

Furthermore, Plaintiff's own time records belie his allegation that he somehow believed he might have been terminated had he disobeyed Fuentes' alleged "mandate" that he not record his time. As set forth in LTF's initial brief, these records show that Plaintiff in fact continued to clock in and out of work during the period when he reported to Fuentes. (*See* ECF No. 43 at 10-12 and citations therein.) Indeed, Plaintiff's records show that from April through December of 2010 – nearly half of the period during which Plaintiff reported to Fuentes – Plaintiff in fact regularly reported his hours. (*See id.*)

Ultimately, Plaintiff's time records demonstrate that he did not appear to follow *any* set practice regarding time keeping, regardless of who was serving as his Department Head; rather, he *randomly elected* not to satisfy his clear obligations to fully and accurately report any and all hours worked. (*See id.*) In light of the foregoing, no reasonable jury could conclude, as Plaintiff would have it, that LTF somehow prevented or discouraged Plaintiff from accurately tracking his time.

    **C.**    **Plaintiff Offers No Evidence Sufficient to Support His Assertion that His Supervisor Fuentes Intentionally Failed to Track His Hours.**

In his response, Plaintiff next attempts to pass off as an undisputed fact his assertion that "Fuentes *intentionally failed to track* Plaintiff's work hours." (Pl.'s Resp. at 7 (emphasis added).) In short, Plaintiff suggests that Fuentes somehow was responsible for recording Plaintiff's work hours, and that Fuentes purposefully failed to report time that he knew Plaintiff had worked. Plaintiff then goes on to assert that this alleged "fact" constitutes actual knowledge

on Fuentes's part that Plaintiff worked unreported hours, which knowledge, he argues, was imputed to LTF. (*See id.* at 7, 9-10.)

Far from being a fact that "Defendants do not dispute," there ultimately is no evidence in the record sufficient to support Plaintiff's contention that Fuentes somehow *purposefully decided not to track or record* hours that Fuentes knew Plaintiff had worked. In fact, the undisputed record evidence mandates precisely the opposite conclusion.

In support of his assertions, Plaintiff cites to the deposition testimony of LTF's Corporate Representative, Liza Shiffman, stating that Fuentes "'dropped the ball' regarding the tracking of Plaintiff's work hours." (Pl.'s Resp. at 7 & n.25 (citing Shiffman Dep. 110:10-23).) Far from evidencing that Fuentes "intentionally failed" to track or record work hours of which he was somehow aware, however, Shiffman's testimony that Fuentes "dropped the ball" ultimately demonstrates that Fuentes in fact *had no idea* what hours, if any, Plaintiff worked for the pay periods in question, because he neglected his duty to *merely review* Plaintiff's time sheets. (*See* Shiffman Dep. 109:10-110:23) In this regard, Shiffman testified as follows:

> A. It's the department head's job to approve time cards. I don't know why Francisco did not approve time cards.
>
> Q. So if we see something here, for example, where Ms. Bacon has come in and approved, **does that mean that Mr. Fuentes, for whatever reason, failed to report the time?**
>
> A. **It means that Francisco Fuentes did not go in and approve time cards for that pay period**.
>
> Q. Did that set off any sort of a red flag that maybe timekeeping wasn't being done according to policy?
>
> A. No, because **Pier Nieddu would be the one who's punching in and out. Francisco did not approve his pay for that pay period**.
>
> …

> Q: … Did Mr. Fuentes drop the ball?
>
> A. Mr. Fuentes did drop the ball then.

(Shiffman Dep. 109:20-110:23 (emphasis added).)

As set forth in LTF's initial brief, and as the foregoing testimony makes clear, Fuentes was *not* responsible, as Plaintiff suggests, for actually tracking or recording Plaintiff's work hours; rather, he had a duty under LTF's "KRONOS Missed Punches/Editing Punches" policy to review and approve the time cards of his direct reports. (*See* ECF No. 43 at 8.) In failing to perform this duty for certain pay periods, Fuentes could not possibly have gained any "actual knowledge" that Plaintiff worked hours he did not report, given that Fuentes *did not even look at Plaintiff's time sheets* for the pay periods in question. It is axiomatic, therefore, that – contrary to Plaintiff's assertions – no alleged "actual knowledge" could have been imputed to LTF vis-à-vis Fuentes's "dropping the ball" as Shiffman testified.

**D.     Plaintiff Offers No Evidence Sufficient to Create a Reasonable Inference that LTF Knew or Had Reason to Know of Any Work Hours Plaintiff Chose Not to Report in Defiance of Company Policies.**

Once again offering a blend of legal conclusion, argument, and unsubstantiated (or flatly contradicted) assertions, Plaintiff attempts to present as record fact his general allegations that LTF had both actual and constructive knowledge that he ostensibly worked unreported hours. (*See* Pl.'s Resp. at 9-15.) Plaintiff fails to even assert, let alone evidence, sufficient facts to create a material dispute with regard to either of these allegations.

With regard to the former, in addition to his meritless "imputed knowledge" argument addressed above, Plaintiff asserts that LTF had actual knowledge that he performed work "off-the-clock" because: 1) his supervisors saw him arrive at work most of the time, 2) his supervisors were "well aware that he was present at work," 3) he would sometimes "check in with his supervisor" when he arrived at work, and 4) his supervisors saw him perform work when they

"would come in and out of Plaintiff's work area." (Pl.'s Resp. at 9.) Plaintiff offers no explanation for why he believes the foregoing alleged facts, if true, somehow suffice to evidence not only that his supervisors were aware of each and every hour he worked in each and every workday, but also that his supervisors were aware that he failed to report all such hours. Standing alone, these alleged facts simply do not suffice to create a material dispute on the issue of whether LTF had actual knowledge that he worked unreported hours.

Furthermore – and significantly – Plaintiff fails to address any of the copious and undisputed evidence, as set forth in LTF's initial brief, ultimately demonstrating that Plaintiff's supervisors were in fact *inherently limited* in their ability to track the work activities and related hours recorded for each individual hair stylist on a day-to-day basis. (*See* ECF No. 43 at 10-15.) This evidence includes Plaintiff's *own testimony* that his supervisors were not tracking the activities of *any* stylists on a day-to-day basis, were frequently distracted, and, as a general rule, did not even work the same hours as he did. (*See* Pl. Dep. 103:4-104:25.) As Plaintiff also recognized in his deposition testimony – even if his supervisors could have observed the precise work performed by each hair stylist each day (which they could not) – they would have *no way* of knowing whether a stylist was on or off the clock when performing work-related tasks. (*See* Pl.'s Dep. 81:4-92:11.) In light of the foregoing, any argument that LTF had actual knowledge of any purported "off the clock" work must fail.

As for Plaintiff's allegation that LTF had constructive knowledge that he worked unreported hours, Plaintiff suggests that various documents, such as his appointment schedules and his time records, should have served as "red flags" alerting LTF that he was working overtime. (*See* Pl.'s Resp. at 11-14.) As LTF established in its initial brief, however, the Company had no duty to investigate and/or evaluate Plaintiff's time records, appointment

schedules, work schedules, and other documents to determine whether he was actually reporting all of his hours where there otherwise was no indication that Plaintiff was working beyond his normal hours. (*See* ECF No. 43 at 19-26.) Indeed, this Court previously acknowledged that "[t]he Fifth Circuit has held that where an employer requires employees to complete time sheets, the employer *has no reason to investigate whether the employees are filling them out* when there is no reason to suspect they are not." (ECF No. 42, September 30 Order at 12 (emphasis added) (*citing Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995) (holding as a matter of law that access to information regarding all the activities of employee does not constitute constructive knowledge that employee was working overtime)).)[2]

Plaintiff's response fails to address the foregoing controlling authority, which both LTF and this Court addressed previously, and which plainly disposes of Plaintiff's constructive-knowledge claim as a matter of law in light of the evidence here. Instead, he confusingly discusses the *Mt. Clemens Pottery* test, making an argument that he "is allowed to prove his

---

[2] In his Argument section, Plaintiff discusses *Maynor v. Dow Chemical Co.,* 671 F. Supp. 2d 902, 928 (S.D. Tex. 2009), which distinguishes *Newton* because the employer in *Maynor* was "provided with records showing the employee's hours spent in training." (*See* Pl.'s Resp. at 34.) Plaintiff notes that the *Maynor* court rejected the employer's argument that because it did not examine the records in question, it should not be liable to pay for the hours worked. (*See id.*) To the extent Plaintiff suggests that this case is more like *Maynor* than *Newton*, any such argument is without merit. Here, unlike in *Maynor*, Plaintiff did not *proactively present* LTF with documents evidencing his hours worked, only to have LTF ignore such documents. *See Maynor*, 671 F. Supp. 2d at 928 (noting that the plaintiff specifically presented training records to his supervisor). Rather, Plaintiff argues that LTF should be deemed to have constructive knowledge of alleged overtime simply because LTF had access to information regarding his appointment schedules and so on. As the holding in *Newton* makes clear – and as this Court recognized previously – employers do not have a general duty to investigate all available information to determine whether employees are accurately completing their time records, unless they know or have reason to know that employees are working off the clock. (ECF No. 42, September 30 Order at 12 (*citing Newton*, 47 F.3d at 749).)

damages by just and reasonable inference" – an argument which, even if true, is wholly irrelevant for purposes of summary judgment. (*See* Pl.'s Resp. at 13.)

### III. ARGUMENT

As demonstrated above, Plaintiff's purported "Procedural and Factual Background" sets forth an amalgamation of inapposite and inaccurate legal conclusions, baseless arguments, and unsubstantiated assertions. Plaintiff's Argument section reiterates many of the same meritless points, ultimately failing to establish any valid issue for trial. Accordingly, as discussed below, LTF's motion for summary judgment must be granted.

### A. Plaintiff's Argument that He "Carried His Burden to Prove Overtime Hours Worked" Is an Irrelevant Straw Man Argument.

Plaintiff's Argument section begins with an erroneous assertion that "Defendants argue that Plaintiff bears the burden of proving with definite and certain evidence that he performed work for which he was not properly compensated." (Pl.'s Resp. at 16.) Plaintiff subsequently discusses the *Mt. Clemens Pottery* decision and its progeny at length, focusing on the "problem of how to determine how many hours have been worked 'off the clock'" for purposes of establishing damages. (*Id.* at 16-25.) As discussed above, this is a straw-man argument. LTF's initial brief *does not even address* the *Mt. Clemens Pottery* test, as this "test" – which considers whether the speculative nature of damages precludes the awarding of damages in FLSA cases – is inapplicable here. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

The issue in this case is not whether, absent accurate time records, Plaintiff can prove as a matter of just and reasonable inference or otherwise how many "overtime" hours he worked. (*See* Pl.'s Resp. 16-20.) Rather, the issue is whether, for purposes of establishing Section 7(i) compliance, LTF was entitled to reasonably rely on Plaintiff to accurately report his time as mandated by Company policies, absent any actual or constructive knowledge that Plaintiff was

-13-

working more hours than recorded. Plaintiff's arguments related to *Mt. Clemens Pottery* and its progeny are wholly irrelevant to the instant motion, and his efforts to distract from the foregoing key issue with his straw man arguments should not be entertained.

As set forth in LTF's initial brief, and as further discussed herein, Plaintiff ultimately cannot establish any material factual issue with regard to his claims that LTF violated Section 7(i)'s requirements. Accordingly, his claims must be dismissed.

### B. Plaintiff Has Not Alleged Sufficient Facts to Show that LTF Had Actual or Constructive Knowledge that He Worked Any Unreported Hours.

In the midst of his irrelevant argument regarding *Mt. Clemens* and related damages-calculation issues, Plaintiff briefly reiterates his meritless position (as set forth in his purported facts section above) that LTF had actual and constructive knowledge that he was performing off-the-clock work. (*See* Pl's Resp. at 22-23, 26-27.)[3] For the reasons articulated above (as well as those set forth in LTF's initial brief (*see* ECF No. 43 at 23-27)), Plaintiff's allegations that LTF somehow knew or had reason to know that he did not report all hours worked cannot stand. *See supra* pp. 10-12.

In light of the record here, this Court ultimately opined in its September 30 Order that Plaintiff has not "allege[d] facts or provide[d] evidence showing that Lifetime Fitness knew,

---

[3] Although Plaintiff sets forth in his Argument section three factors that he asserts courts consider when assessing whether employers have knowledge of uncompensated time, he fails to analyze those factors. (*See* Pl.'s Resp. at 44.) He likely fails to do so because he is well aware that he cannot establish *any* of the factors he identifies in light of the undisputed evidence here. The factors in question are as follows: 1) the employer was in a position to see the employees work, 2) there was too much work performed for the working hours allotted, and 3) there were repeated and numerous occasions of extra work being performed. (*Id.*) As LTF clearly established in its initial brief, due to a range of circumstances, Department Heads were not in a position to track employees or their work throughout the workday. (*See* ECF No. 43 at 10-15.) In light of this evidence, Plaintiff cannot establish that LTF either watched him work or was aware of any extra or excessive work performed by him outside of his regular hours.

*actually or constructively*, or that it should have known by watching hair stylists in the workplace, about Nieddu's … alleged unrecorded work time." (ECF No. 42, September 30 Order at 40 (emphasis added).)  In sum – as this Court concluded – Plaintiff's identified "red flags," which he claims "should have alerted LTF to his failure to follow the written company policy of clocking in and out to accurately reflect hours worked," are "insufficient to establish that Lifetime Fitness *even constructively* knew he was not doing so." (*Id.* (emphasis added).) Plaintiff has not proffered any facts, let alone supporting evidence, sufficient to change this Court's prior analyses on this issue.

  **C. Plaintiff Cannot Demonstrate that Fuentes Discouraged or Prevented Him from Reporting His Hours.**

  In his Argument section, Plaintiff also attempts to revive his overreaching assertion that Fuentes somehow "prevented" him from reporting his hours. (*See* Pl.'s Resp. at 28-31.)  As discussed above, however, neither Fuentes – nor any other supervisor – did any such thing. Rather, the most that Plaintiff can establish here is that Fuentes told him "not to worry about" reporting his time because he was a commissioned employee. (*See* Pl. Dep. 88-90.)  Contrary to Plaintiff's assertions, this language cannot be construed as threatening potential discharge or otherwise actively dissuading Plaintiff from reporting his time.  *See discussion supra* pp. 6-10. As the undisputed evidence ultimately shows, Plaintiff was *well aware* that LTF's policies required him to record any and all time, and he was *not* dissuaded from clocking in and out while reporting to Mr. Fuentes; rather, he engaged in erratic timekeeping practices throughout his employment.  *See supra* pp. 8-12.  In light of the evidence here, Plaintiff is distinguishable from the plaintiffs in the cases he cites for the proposition that supervisors may have knowledge of unreported hours where they pressure employees to falsify their timesheets. (*See* Pl.'s Resp. 28-29, 31, 35-38 and cases cited therein.)

### D. Plaintiff Ultimately Proffers No Evidence to Support His Claim that LTF Allowed Uncompensated Overtime.

Finally, Plaintiff's Argument section suggests that the numerous and detailed rules and policies the Company has established to ensure compliance with the FLSA are not enough to satisfy LTF's "burden" to ensure uncompensated overtime is not being performed. (*See* Pl.'s Resp. at 39-43.) In support of his argument that LTF somehow failed to meet this "burden," Plaintiff points to the fact that LTF never reprimanded him for failing to report his hours in violation of the Company's rules. (*See id.* at 40.) However, if LTF *was not aware* that Plaintiff failed to follow the Company's time reporting procedures, it could not reprimand him for any such failure.

To the extent that LTF has any "burden" to ensure no uncompensated overtime is allowed, the evidence here shows any such burden is satisfied. LTF has not merely adopted "hollow" policies to ensure FLSA compliance. Rather, the evidence shows that, in addition to establishing appropriate time recording policies and training employees that they must comply with them, LTF also has adopted the KRONOS Missed Punches/Editing Punches policy, which provides that Department Heads must review the time records of their individual direct reports at least every other day to look for any potential errors or inaccuracies. (*See* Weber Aff. ¶ 10 & Ex. B; *see also* Christensen Aff. Ex. E (demonstrating that Plaintiffs' Department Heads did, in fact, review and sign off on Plaintiff's time record)s.) The Company additionally has established a procedure for employees to correct any time reporting inaccuracies by completing a KRONOS Exception Sheet and providing it to their Department Head. (*See* Weber Aff. ¶ 10 & Ex. B.) Furthermore, the evidence shows that, from time to time, LTF has sent notice to various employees reminding them of the importance of accurately and completely recording all time worked. (*See id.* ¶¶ 11-12 & Ex. D.)

Ultimately, as noted in LTF's initial brief – and as this Court previously recognized – not only has LTF enacted appropriate formal policies to ensure accurate timekeeping, but the evidence also demonstrates that LTF puts those policies into practice. (*See* ECF No. 42, September 30 Order at 34 ("[T]he evidence shows that Lifetime Fitness had appropriate formal [timekeeping] policies and put them into practice.").) Accordingly, any argument that LTF has merely promulgated "hollow" rules cannot stand.

## IV. CONCLUSION

For the reasons stated above, as well as those set forth in LTF's initial brief, LTF's motion for summary judgment must be granted. There is no dispute that LTF requires its commissioned employees to accurately report and receive proper compensation for any and all hours worked. This directive is expressed throughout LTF's employment policies. Plaintiff's own job description also lists clocking in and out of the Company's timekeeping system as a *specific requirement* of the job. In light of these mandates, LTF reasonably relied on the work hours that Plaintiff reported to ensure his compensation was in compliance with the FLSA's Section 7(i) exemption. Although Plaintiff now claims that LTF should be liable for alleged minimum-wage and overtime violations based on work time that he – in *direct violation* of Company policies – failed to report, he proffers no evidence sufficient to show that LTF had actual or constructive knowledge of any purported unreported hours. Under these circumstances, Plaintiff's *own conscious decision* not to accurately report all hours worked cannot, as a matter of law, render LTF liable for purportedly violating Section 7(i) of the FLSA. LTF therefore respectfully requests that the Court grant its motion for summary judgment and dismiss with prejudice each and every claim that Plaintiff has asserted against LTF.

Dated:  February 3, 2014                                  Respectfully submitted,


                                              By: s/Douglas R. Christensen
                                                     Douglas R. Christensen (MN #192594)
                                                      (Admitted *pro hac vice*)
                                                   50 South Sixth Street, Suite 1500
                                                 Minneapolis, MN 55402-1498
                                                 Telephone:  (612) 340-2600
                                                 Email:  christensen.doug@dorsey.com

**OF COUNSEL FOR DEFENDANTS**              **ATTORNEY IN CHARGE FOR DEFENDANTS**

DORSEY & WHITNEY LLP

Marilyn Clark (MN #386615)
  (Admitted *pro hac vice*)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Email:  clark.marilyn@dorsey.com
Email:  ackerman.sarabeth@dorsey.com

Scott M. Nelson
Texas Bar No.: 00797154
S.D. Bar No.: 20499
Emily Harbison
Texas Bar No.: 24059892
S.D.  Bar No.: 902584
BAKER & McKENZIE LLP
711 Louisiana, Suite 3400
Houston, TX 77002
Telephone: (713) 427-5000
Facsimile: (713) 427-5099
Email:  scott.nelson@bakermckenzie.com
E-mail: emily.harbison@bakermckenzie.com