IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PIER NIEDDU,                        §
                                    §
            Plaintiff,              §
                                    §
VS.                                 §   CIVIL ACTION H-12-2726
                                    §
LIFETIME FITNESS, INC., LTF         §
CLUB MANAGEMENT COMPANY, LLC, LTF   §
CMBS MANAGING MEMBER, INC., AND     §
LTF CLUB OPERATIONS COMPANY,        §
                                    §
            Defendants.             §

**OPINION AND ORDER**

Pending before the Court in the above referenced action, grounded in the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. §§ 201-219, and seeking to recover unpaid minimum wage for all hours worked and overtime for hours worked in excess of 40 hours per week under 29 U.S. C. §§ 206(a) and 207(a),[1]  is

---

[1] Section 206(a)(1), addressing Minimum Wage, provides in relevant part,

(a) Employees engaged in commerce . . . . Every employer shall pay to each of his employees who in any workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce . . . wages at the following rates:

   (1) except as otherwise provided in this section, not less than-

      (A) $5.85 an hour, beginning on the 60th day after May 25, 2007;
      (B) $6.55 an hour, beginning 12 months after that 60th day; and
      (c) $7.25 an hour, beginning 24 months after that 60th day.

-1-

Defendants Life Time Fitness, Inc., LTF Club Management Company, LLC, and LTF Club Operations, Inc.'s (collectively, "LTF's")[2] motion for summary judgment (instrument #43).

In an Opinion and Order dated September 9, 2013 (#42), the Court denied Plaintiff Pier Nieddu's ("Nieddu's") motion for conditional certification (#33) of a revised class comprised of LTF's current and former commission-paid hair stylists employed at the Houston, Texas CityCentre location from September 11, 2009 to the present. Nieddu now proceeds individually on his claims against LTF.

## Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most

---

Section 207(a), addressing Maximum Hours, provides, "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Where an employer is found liable for failure to pay the specified minimum hourly wage or overtime under §§ 206 and/or 207, the employer must pay the successful plaintiff employees the amount of unpaid minimum wages or unpaid overtime compensation, liquidated damages in an amount equal to their awards for minimum wage and overtime payments under 29 U.S.C. § 216, and reasonable expenses and attorney's fees. *Jones v. Supermedia, Inc.*, 281 F.R.D. 282, 286-87 (N.D. Tex. 2012).

[2] LTF CMBS Managing Member, Inc. was dismissed on 3/06/13 (#32), pursuant to a joint motion from Plaintiff and the other Defendants (#31).

Case 4:12-cv-02726  Document 51  Filed in TXSD on 08/12/14  Page 3 of 45


favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial.  *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712

(5th Cir. 1994).   "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323.   The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).   "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'"  *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986).   "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Id., quoting Liberty Lobby*, 477 U.S. at 252.   The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'"  *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d

194, 197 (5th Cir. 1986).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S.  at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).  The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

**Relevant Law**

-5-

Title 29 U.S.C. § 207(a) prohibits any employer from employing any of its covered employees for a work week that is longer than forty hours unless that employee is paid compensation for his work at least one and a half times the regular rate for all overtime hours.  If the employer violates this provision, he is liable to the employee for the overtime wage and an additional equal amount as liquidated damages, while the court may also award reasonable attorney's fees and costs to the plaintiff employee under 29 U.S.C. § 216(b).  Nevertheless if the employer lacks any knowledge that the employee is working overtime and the employee fails to inform the employer that he is or prevents the employer from gaining knowledge of the overtime work, the employer's failure to compensate for the overtime work does not violate § 207.  *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 448, at *4 (5th Cir. Aug. 4, 2009), *citing Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995), *citing Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).

To recover compensation for overtime work, the plaintiff bears the burden of proving he performed the work for which he was not properly paid.  *Harvill v. Westward Communications*, *LLC*, 433 F.3d 428, 441 (5th Cir. 2005).  The employee must show that he was "employed" during the time for which he seeks compensation.  *Newton*, 47 F.3d at 748.  To demonstrate that he was employed, he must show that the employer had either actual or constructive

knowledge that the employee was working overtime. *Von Friewalde*, 339 Fed. Appx. at 455. "Constructive knowledge exists if 'by exercising reasonable diligence' an employer would become aware that an employee is working overtime." *Id.* The plaintiff must produce enough "evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Harvill*, 433 F.3d at 441*, citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-88 (1946)("[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."), *superseded by statute*, Portal-to-Portal Act of 1947, 29 U.S.C. § 216(b)*, on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.3d 1289, 1293 (D. D. Cir. 1972). The evidence of the hours worked does not have to be "perfectly accurate," but must provide "a sufficient basis to calculate the number of hours worked . . . . " *Marshall v. Mammas Fried Chicken, Inc.*, 590 F.2d 598, 599 (5th Cir. 1979)(*per curiam*), *citing Hodgson v. Jones*, 434 F.2d 1061, 1062 (5th Cir. 1970). "If the employer's records are 'proper and accurate,' the employee may rely on these . . . ." *Rosales v. Lore*, 149 Fed. Appx. 248, 255 (Aug. 19, 2005), *citing Mt. Clemens Pottery*, 328 U.S. at 687.

"'An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to

perform overtime work without proper compensation, even if the employee does not make a claim for overtime compensation.'" *Newton*, 47 F.3d at 748, *quoting Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).  As noted, moreover, if the "'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207.'"  *Id., quoting id.; in accord, Harvill v. Westward Communications, LLC*, 433 F.3d 428, 441 (5th Cir. 2005).

In *Forrester*, the Ninth Circuit affirmed the district court's grant of summary judgment to the employer because the employee turned in time sheets that failed to report overtime hours and the employee failed to demonstrate that the employer should have known that the employee worked more hours than those claimed on the time sheets.  *Id.*

In *Newton*, 47 F.3d at 749, the Fifth Circuit cites its opinion in *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972), in which it upheld a judgment in favor of an employer and estopped a home-working employee from seeking extra compensation because she had worked more hours than she claimed in her time sheets.  She actually reported fewer hours than she worked because the company required employees to assemble a certain minimum number of electric light pull cords in an eight-hour day, she could not

-8-

complete that number within the time limit and was therefore afraid of losing her job.  *Id.* at 1325.  She subsequently sued her employer for unpaid minimum wages and overtime pay, plus liquidated damages and attorney's fees.  *Id.*  The panel found that the employer was dependent on the employee to correctly report the number of hours worked.  *Id.* at 1326.  The employee argued that the it was the employer's duty to keep and maintain records of compensation, including overtime, and that the employer could not transfer that duty to the employee.  Rejecting her argument, the panel opined,

> The fact that the employer utilizes a minimum required production is not alone enough to impose liability to an industrial homeworker who, in order to maintain her job, understates the number of hours worked.  The regulations recognize that piece rates are permissible subject to attainment of the hourly minimum wage.  There is no evidence that this employer's norm was not being achieved by workers in general or that the employer otherwise knew or should have known that it was not achievable by workers in general or this worker in particular.  There was no evidence that the employer required the entry of false reports of hours worked, but rather appellant concedes that no supervisory person, including Baker, the one-man management for the company, ever told her to do so.  There is no evidence that the company in any manner encouraged workers to falsely report (unless we were to infer an illegal or improper encouragement from the mere existence of a norm, which we decline to do), and no evidence that it knew or should have known that appellant, unable to perform up to the employer's standard, was giving false information to conceal that fact in order to hold onto her job.

*Id.*  The panel concluded that the district court correctly granted a directed verdict on the grounds that the appellant was estopped from seeking to recover more compensation and could not profit from

her own wrongful act in providing false data to her employer.

In *Newton* a police officer sued his employer, the City of Henderson ("the City"), for overtime compensation under 29 U.S.C. § 207 for the period when he was assigned to the federal Drug Enforcement Agency's ("DEA's") Task Force, from October 1987-September 30, 1991, under an agreement between the City and the DEA. During that time the City was Newton's employer and was in charge of establishing salary and benefits, including overtime, while the DEA controlled Newton's day-to-day activities and duties. The City's personnel policy mandated that all police department employees had to obtain approval before working overtime. *Id.* Newton conceded that he was not authorized to work overtime before March 7, 1990, and that subsequently, he was authorized to work only approximately 12.5 hours overtime per two-week pay period. Newton did ask his Police Department supervisors for permission to work more overtime, but each time he was denied on the grounds that the County could not afford the additional pay. *Id.* at 747-48. Morever, the City required an employee seeking overtime to report those hours within 72 hours of the time worked. *Id.* at 748. After Newton resigned in September 1991, he submitted a separate time report to the DEA for the overtime hours that he is claiming in this suit.

After a bench trial the district court found that Newton was employed by the City during the period for which he was claiming

excess overtime, that the City had not shown that it acted in good faith reliance that its actions were lawful, and that the City was liable for a "continuing violation."  47 F.3d at 747.  It awarded the Newton overtime compensation back to August 1988 and liquidated damages.  The City appealed.

On appeal Newton contended that his City supervisors knew he was working excess overtime hours because he orally reported his activities to them each day.  *Id.* at 748.  Although he did not tell them the number of hours he put in each day, he argues that since he was an undercover agent, they knew he had to work outside regularly scheduled hours, as the two supervisors attested.  Both supervisors, however, and Newton's DEA supervisor testified that they assumed Newton was taking time off, i.e., "flex time," to compensate, so that he was not exceeding his authorized hours per pay period.  *Id.*  While his DEA supervisor never expressly told Newton to work overtime, Newton testified that this supervisor told him to "to go out and do the job."  *Id.*  One of Newton's City police supervisors was Police Chief Randall Freeman, who also sat on the Board of Directors of the Task Force and had access to the 352 forms Newton filled out and submitted in applying for the overtime hours from the DEA.  *Id.*  Chief Freeman testified that he never saw these forms and that the board never discussed Newton's overtime at board meetings.

The district court had determined that such access by the

police chief, who was also the City Manager at the time, to
information about the activities of the Task Force imputed
constructive knowledge to the City about the overtime that Newton
was working.   The Fifth Circuit disagreed and held that "as a
matter of law such 'access' to information does not constitute
constructive knowledge that Newton was working overtime."  47 F.3d
at 749.  The City has specific procedures for obtaining payment for
overtime, which Newton ignored.  The panel opined,

> If we were to hold that the City had constructive
> knowledge that Newton was working overtime because
> Freeman had the ability to investigate whether or not
> Newton was truthfully filling out the City's payroll
> forms, we would essentially be stating that the City did
> not have the right to require an employee to adhere to
> its procedures for claiming overtime.  The fact that
> Freeman had access to the Task Force's activities means
> that perhaps he could have known that Newton was working
> overtime hours, but the question here is whether he
> should have known.  In light of the fact that Freemen
> explicitly ordered Newton not to work overtime and in
> light of the fact that Newton admits that he never
> demanded payment for overtime already worked, it is clear
> that access to information regarding the Task Force's
> activities, standing alone, is insufficient to support
> the conclusion that the City should have known that
> Newton was working overtime.

*Id.* at 749.

"Every employer subject to any provisions of this Act . . .
shall make, keep, and preserve such records of the person employed
by him and of wages, hours, and other conditions and practices of
employment maintained by him . . . ." 29 U.S.C. § 211(c).  To
recover overtime compensation for hours worked where the employer
failed to keep adequate records, the plaintiff must show that he

"'performed work for which he was not properly compensated.'" *Von Friewald*, 339 Fed. Appx at 455 (5th Cir. Aug. 4, 2009), *citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)("[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."), *superseded by statute*, Portal-to-Portal Act of 1947, 29 U.S.C. § 216(b)*, on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.3d 1289, 1293 (D. D. Cir. 1972). In *Mt. Clemens Pottery Co.*, the Supreme Court opined,

> Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours, and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper fair standard must be erected for the employee to meet in carrying out his burden of proof.
> When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of these records. But when the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of the employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation, we hold that an employee has carried his burden if he proves that

-13-

he has in fact performed work for which he was improperly
compensated and if he produces sufficient evidence to
show the amount and extent of that work as a matter of
just and reasonable inference.  The burden then shifts to
the employer to come forward with evidence of the precise
amount of work performed or with evidence to negative the
reasonableness of the inference to be drawn from the
employee's evidence.  If the employer fails to produce
such evidence, the court may award damages to the
employee, even though the results be only approximate.

*Mt. Clements Pottery Co.*, 328 U.S. at 687-88.  If the defendant

fails to rebut the plaintiff's evidence, the plaintiff's

recollection and estimates of hours are presumed to be correct.

*Id.* at 687-88.

### LTF's Motion for Summary Judgment (#43)

LTF moves for summary judgment on the grounds that Nieddu

fails to allege facts to support his claims for unpaid minimum wage

and/or overtime, or any other purported improper payment by LTF

that Nieddu claims violated the FLSA.  LTF asserts that Nieddu's

claims are based largely on his unproven allegation that one

supervisor, Francisco Fuentes ("Fuentes"), told him that as a

commissioned hair stylist employee of LTF, Nieddu did not have to

report his time worked.  Nieddu's Dep. at 88-90.  Despite the fact

that Nieddu reported to six different supervisors in the course of

his employment by LTF from April 20, 2010 to March 18, 2012, he

could not remember any supervisor other than Fuentes that allegedly

told Nieddu the he did not have to report his work time.  *Id.*  LTF

objects that Nieddu's claim is not viable because Nieddu's decision

not to report all the hours he worked is contrary to LTF's clear

-14-

policies mandating accurate timekeeping and receipt of proper compensation for all hours worked by commissioned employees, who are all trained that they must be aware of and comply with these policies.

There is no dispute that LTF mandates that its commissioned employers must accurately report and receive adequate compensation of all hours that they worked, as expressly indicated in LTF's employment policies and in LTF's training of employees. #43-4, Weber Affid. at ¶ 4. Clocking in and out of the Company's timekeeping system is a specific requirement of the job. Evidence demonstrates that commissioned employees are authorized to track their own hours and are responsible for self-reporting all compensable work time, and if they fail to do so, they may be subject to discipline, possibly even termination of their employment. LTF insists that Nieddu's conscious decision not to accurately report all the hours he worked violates LTF's policies and cannot, as a matter of law, impose liability on LTF for violating Section 7(i)[3] of the FLSA. In *Wood v. Mid-America*

---

[3] Section 7(i), 29 U.S.C. § 107(i)("Employment by retail or service establishment"), provides an exemption from the FLSA's overtime provisions:

 No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half

*Management Corp.*, 192 Fed. Appx. 378, 381 (6th Cir. Aug. 1, 2006),

the Sixth Circuit opined,

> At the end of the day, an employee must show that
> the employer knew or should have known that he was
> working overtime or, better yet, he should report the
> overtime hours himself. Either way, the employee bears
> some responsibility for proper implementation of the
> FLSA's overtime provisions. An employer cannot satisfy
> an obligation that it has no reason to think exists. An
> employee cannot undermine his employer's efforts to
> comply with the FLSA by consciously omitting overtime
> hours for which he knew he could be paid.

*See also Davis v. Food Lion*, 792 F.2d 1274 (4th Cir. 1986)(Because

the evidence showed that the employer did not know and should not

have known of the manager's overtime work, the employer was not

liable to the manager for overtime compensation.); *in accord,*

*Newton*, 47 F.3d at 748-49 (where employer has no reason to know

---

his compensation for a representative period (not less
than one month) represents commissions on goods or
services. In determining the proportion of compensation
representing commissions, all earnings resulting from the
application of a bona fide commission rate shall be
deemed commissions on goods or services without regard to
whether the computed commissions exceed the draw or
guarantee.

Regarding certain record-keeping requirements related to the
§ 7(i) exemption, 29 C.F.R. § 516.16 provides in part, "With
respect to each employee of a retail or service establishment
exempt from the overtime pay requirements of the Act pursuant to
the provisions of section 7(i), employers shall maintain and
preserve payroll and other records containing all information and
data required by § 516.2(a) except paragraphs (a)(6),(8),(9), and
(11) . . . ."

Exemptions are narrowly construed under the statute and the
employer bears the burden to prove an exemption applies. *Cheatham
v. Allstate Ins. Co.*, 465 F.3d 78, 584 (5th Cir. 2006); *Vela v. City
of Houston*, 276 F.3d 659, 666 (5th Cir. 2001).

-16-

that an employee is working overtime, the employer is not liable for failure to pay overtime), and *Am. Fed. of State, County and Mun. Employees v. La. ex rel. Dept. of Health and Hospitals*, Nos. Civ. A. 90-4389 and 91-0857, 2001 WL 19999, at *11-14 (E.D. La. 2001). LTF insists that it had no actual or constructive knowledge of Plaintiff's claimed off-the-clock work.

LTF charges that Nieddu is manufacturing a meritless claim in alleging that LTF violated the FLSA in its application of "Shop Charges" as part of its commission calculation for hair stylists' salon services for regular-hour compensation. In its previous Opinion and Order, 977 F. Supp. 2d at 704, the Court wrote,

> "Shop Charges" are not unlawful deductions from wages. They are deducted from the price of each service before a Stylist's Service Commission is calculated. Shop Charges are meant to cover a range of costs involved in providing various salon services to customers, e.g., the cost of using salon products and linens, and they vary with the particular service. Furthermore Shop Charges are not a deduction from the hair stylists' earned wages; instead they are automatically calculated at the point of sale and are deducted from service charges (through the SpaBiz or ShortCuts Point-of-Sale systems) *before* the calculation of Service Commissions. [citations omitted]

See also #43-3, Shiffman Affid. ¶ 10. LTF now argues that Nieddu makes no allegations, no less submits any evidence, showing why Shop Charges allegedly violate the FLSA. As noted, Shop Charges applicable to each service are automatically calculated when the sale occurs and are deducted from service charges before Service Commissions are calculated. Although case law addressing the meaning of "commission" under the FLSA's retail-commission

-17-

exception is sparse,[4] those decisions that do exist hold that
employers are not required to pay commissions strictly based on a
percentage of the total cost to the consumer to satisfy § 7(i)'s
definition of "commission." *See, e.g., Parker v. Nutrisystem,
Inc.*, 620 F.3d 274, 283 (3d Cir. 2010)(declining to require that a
commission under § 7(i) be strictly based on a percentage of the
end cost to the consumer"); *Yi v. Sterling Collision Centers*, 480
F.3d 505, 509-10 (7th Cir. 2007)(a commission can be based on the
full price of the good or service sold or on only part of the
price--such as the price of the labor that goes into the good or
service for example).

LTF argues that Nieddu fails to assert viable claims for
alleged minimum wage and/or overtime violations of the FLSA. The
undisputed evidence shows that LTF implemented various policies,
procedures, and systems to accurately track commissioned hair
stylists' hours, calculate commissions due, and identify draws
where needed, and thereby to satisfy § 7(i). Nieddu fails to
provide proof of any corporate decision, policy or plan by LTF that
kept him from accurately recording his time or from being properly
paid under § 7(i). He does not claim that the KRONOS system kept
him from accurately reporting his hours worked or that LTF's
SpaBiz, ShortCuts, or Workday systems failed to correctly calculate

---

[4] *See Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254
(11th Cir. 2001).

commissions or draws due to him, or that he was disciplined in any way when he did accurately report all hours worked.  He does not dispute that he self-reported his own payroll time.  He does not contend that LTF knew of and suffered or permitted any "off the clock" hours.  All he alleges is that a single supervisor told him not to worry about clocking in or clocking out because he was a commissioned employee.  These bare, unsupported allegations cannot defeat summary judgment.

Nieddu asserts that LTF failed to comply with the FLSA's record-keeping requirements by neglecting to maintain accurate time records.  LTF contends that Nieddu is ignoring the fact that Nieddu's own actions impeded LTF's efforts to meet its record-keeping obligations.

For the purposes of this summary judgment motion only, LTF assumes the correctness of Plaintiff's version of the facts.  LTF argues that based on the undisputed evidence here, Nieddu has failed to raise a material fact issue on any of his claims, and therefore LTF should be granted summary judgment.  It summarizes the following as such facts.

Pier Nieddu is a hair stylist who was formerly employed by the LTF facility in Town & Country, Houston, Texas, from approximately April 20, 2010 to March 15, 2012.  Douglas R. Christensen Affid., Ex. A to #43, Dep. of Pier Nieddu, 15:4-18, 37:6-14 & Exs. 3 and 10.

LTF is a nationwide chain of health and fitness facilities under the control of the corporate office of Lifetime Fitness, Inc., located in Minnesota, and holds itself out to the general public as a "single enterprise,"[5] each entity liable for the violations of the others.  LTF runs each location identically with the same kind of facility and service, sharing employees, having common management, pooling resources, and having common ownership and operating from the same corporate headquarters, having the same operating name, advertising together on the same website, and using the same business model.  LTF operates approximately 105 Lifetime Fitness locations in twenty-one states and twenty-six major cities and employs approximately 20,000 employees nationwide.  LTF employs hair stylists at all of its locations.  Alternatively, states the

---

[5] "The minimum wage and overtime provisions of the FLSA apply to employees of 'an enterprise engaged in commerce or in the production of goods for commerce.'"  *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 969 (5th Cir. 1984), *quoting* §§ 206 and 207). The FLSA defines "enterprise" in part as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organization units including departments of an establishment operated through leasing arrangements."  29 U.S.C. § 203(r)(1).  Section 203(s) restricts the definition to "an enterprise whose annual gross volume sales made or business done is not less than $500,000." The three main elements of a statutory enterprise, which must be shown to establish that two entities functioned as a single enterprise, are related activities, unified operation or common control, and common business purpose."  *Orozco v. Plackis*, ___ F. Supp. 2d ___, 2013 WL 3306844, at *5 (W.D. Tex. June 13, 2013), *citing Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973), and *Reich v. Bay, Inc.*, 23 F.3d 110, 114 (5th Cir. 1994).

Complaint, the LTF entities operate as joint employers.[6]

---

[6] The FLSA defines an "employer" very broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  To determine if an individual or an entity is an "employer" under the statute, applying an "economic reality" test, a court should examine whether he or it "'(1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012), *quoting Williams v. Henagen*, 595 F.3d 610, 620 (5th Cir. 2010).   For a *prima facie* case under the FLSA, the employee bears the burden of demonstrating the existence of an employer-employee relationship by a preponderance of the evidence. *Artis v. Asberry*, Civ. A. No. G-10-323, 2012 WL 5031196, at *3 (S.D. Tex. Oct. 16, 2012).  Whether a person or an entity is an "employer" under the statute is a question of law. *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir. 1985).

There can be multiple employers under the FLSA and 29 C.F.R. § 791.2(a)("A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. . . . . [I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek."). Under 29 C.F.R. § 791.2(b),

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> > (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
> >
> > (2) Where one employer is acting directly or

Specifically Nieddu complains that LTF violated the FLSA by (a) failing to pay at least the minimum wage for hours worked in a workweek where no overtime was worked (29 U.S.C. §§ 206(a) and 207(a)[7]); (b) failing to pay at least one and one-half times the minimum wage for every hour worked during weeks where the hair stylist worked over forty hours in a workweek; (c) not maintaining the required records[8] to comply with the commissioned employee FLSA

_____

> indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee, and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

[7] Where an employer is found liable for failure to pay the specified minimum hourly wage or overtime under §§ 206 and/or 207, the employer must pay the successful plaintiff employees the amount of unpaid minimum wages or unpaid overtime compensation, liquidated damages in an amount equal to their awards for minimum wage and overtime payments under 29 U.S.C. § 216, and reasonable expenses and attorney's fees. *Jones v. Supermedia, Inc.*, 281 F.R.D. 282, 286-87 (N.D. Tex. 2012).

[8] Under 29 U.S.C. § 211(c) in relevant part,

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or

exemption (section 7(i)); and (d) by passing on business expenses (e.g., for shampoo, hair coloring products, etc.) to its hair stylists, resulting in a denial of minimum wage and/or of overtime at the federally mandated premium rate for overtime worked.

LTF classifies its hair stylist employees as "Apprentices " or "Stylists." Liza Shiffman Affid. ¶¶ 5-7, Ex. 3 to #43; Alexandra Yanez Affid. ¶ 8, Ex. 1 to #43. Apprentices are generally hair stylists beginning their employment by a period of training and development. The purpose of the Apprentice program is for Apprentices to gain on-the-job experience and to build a client base. Shiffman Affid. at ¶5. Apprentices are paid on an hourly, non-exempt basis for all time they spend on work-related activities, including any overtime premium due under federal or state law. *Id.* In addition Apprentices, as well as Stylists, can receive sales commissions on salon products and other retail goods that they sell to customers, and commissions resulting because of their work are awarded even if the actual transactions are completed on days when they are not at work. Thus the company's records may reflect compensation to an Apprentice or Stylist for days when he or she was not at work. *Id.* at ¶ 6. The amount of the sales commission depends on the sales volume and the commission

---

orders therein. . . . .

plan.[9]  *Id.*

     LTF maintains that Nieddu was properly compensated for all the hours that he self-reported while he was an Apprentice from April 20, 2010 to July 31, 2010.  Christensen Affid. Ex. C at 3.  Nieddu has not claimed that he did not report any hours or was improperly paid during this Apprenticeship term.

     After an Apprentice successfully completes his Apprentice term, in compliance with Section 7(i)'s exemption requirements, he becomes a Stylist and is paid mainly on a commission basis. Christensen Affid. Ex. C at ¶¶ 7-8.  In addition to the sales commission discussed above, Stylists receive commissions on a portion of the price charged to their clients for all salon services that the Stylists provide.  The price charged to the client varies with the particular service provided and the individual Stylist's service rate.  Once the individual Stylist's service rate is determined, "Shop Charges" and any applicable promotional or other discounts are deducted from the price of the service in question.  Service Commissions are then calculated off of this final service charge.  *Id.*  The particular Service Commission rate is based on the individual Stylist's "Pay Schedule."  *Id.* at ¶ 11.

---

[9] For example, LTF observes that in 2012, sales commissions were calculated at 15% of the product retail sale priced for total sales per client of $7.00 to $13.99, and at a rate of 18% for total sales per client of $14 or more.  #43 at p.4.

In addition to sales commissions and service commissions, during the period that Nieddu worked in Texas, Stylists also received an hourly rate of $10.88 (or one and a half times the minimum-wage rate) for the time they spent in training sessions and meetings, including travel time.

LTF designed its reporting and compensation policies and practices to ensure that it complied with the FLSA's section 7(i), which requires that to qualify as exempt from the FLSA overtime provisions, a commissioned employee's earnings for a given pay period must be at least one and a half times the minimum hourly rate applicable to him and more than half his compensation represents commissions on goods or services.  29 U.S.C. § 207(i).  *See also* 29 C.F.R. § 516(2)(a)(6)(ii).  When a Stylist's earnings for a pay period do not equal at least one and a half times the applicable minimum wage for the number of hours worked, the Stylist receives a "draw" or "minimum wage adjustment," i.e., "a payment which, along with any commissions earned during the pay period in question, will render the employee's pay equal to the applicable minimum rate multiplied by the hours worked in the pay period, minus any available tip credit authorized under federal and applicable state law." #43-4, Shiffman Affid. ¶ 12.  In Houston at Nieddu's location, that minimum rate for a section 7(i) exemption was $10.88 per hour.  *Id.*

LTF's Timekeeping policy requires hourly and commissioned

employees to accurately and completely record all hours worked in LTF's electronic timekeeping system, KRONOS. *Id.* #43-4, Brianna Weber Affid., Ex. 4, ¶ 6. It states clearly that each hourly and commissioned employee is responsible for accurate recordkeeping of all the time he or she has worked, including all hours that employees actually spent on job-related duties and any paid breaks in accordance with applicable law, in order to accurately calculate pay and benefits. #43-4, Weber Affid. ¶¶ 5-8 and Ex. A. If for any reason changes or corrections need to be made on the time reports in KRONOS, the employee must inform his Department head. If he forgets to punch in or out as required under the Timekeeping policy, he must immediately fill out a KRONOS Missed Punch form and give it to his Department Head to process.

Under LTF's "KRONOS Missed Punches/Editing Punches" policy, Department Heads must at least every other day review the time records that their individual employees have directly reported to KRONOS for any potential errors or inadequacies. #43-4, Weber Affid., ¶ 10 & Ex. B. The Department Head a/k/a supervisor (#43-1, Yanez Affid. at ¶¶ 4,7) must have a properly completed KRONOS Exception Sheet from the employee before the Department Head can edit any employee's punches; if the Department Head edits the employee's punches without the Exception Sheet, he is subject to discipline, up to and including termination. *Id.* Under the Timekeeping policy, employees who alter or falsify their records or

-26-

otherwise do not provide accurate timekeeping information are also subject to discipline up to and including termination. *Id.* at ¶ 11 and Ex. A. LTF's "Accuracy of Company Records" also requires that employees make sure that all data included in LTF records are complete and accurate or the employee is subject to discipline, up to and including termination. *Id.* & Ex. C. Furthermore, LTF reminds various employees now and then, for instance when their weekly hours averages fall below the minimum required to maintain various employee benefits, about the importance of accurate timekeeping. *Id.* at ¶ 12 & Ex. D.

In addition, in its Stylist Position Description, LTF has made accurate recordkeeping a specific requirement for the Stylist job. #43-1, Yanez Affid. at ¶ 5 & Ex. A (hair stylist's responsibilities include "punches in and out of Kronos" and "adheres to company policies and procedures."). In his deposition, Nieddu stated that he did not dispute that the policies discussed *supra* correctly state LTF's expectations about time reporting. Pl.'s Dep., 90:4-16; 109:12-19.

LTF uses this reported data to make sure that commissioned Stylists receive the correct payment under section 7(i). #43-3, Shiffman Affid. at ¶¶ 13-14. The hours reported to KRONOS are sent to a program called Workday, along with commission data gathered by another electronic program called SpaBiz (its predecessor program was called ShortCuts), which are Spa Point-of-Sale systems. *Id.* at

-27-

¶ 13.  The Workday system then automatically calculates whether any of the commissioned stylists must be paid a draw for the particular pay period being reviewed.

LTF maintains that during Nieddu's tenure as a commissioned Stylist, Nieddu was properly paid based on his self-reported hours worked in accord with LTF's policies and practices.   #43-2, Christensen Affid. Exs. D-G; #42 (Sept. 30 Opinion and Order at p. 40.

Nieddu, in spite of LTF's unequivocal policies, states that because Francisco Fuentes told Nieddu that as a commissioned employee, he did not need to worry about reporting his hours worked, he did not record all the hours that he spent on work-related activity.  Plaintiff's Dep., 88-90; 60:11-61:22; 90:4-16; 96:1-97:16; 109:12-20.  Yet he continued to clock in and out of work during the times when he reported to Fuentes, suggesting that he did not believe that Fuentes' comment negated LTF's clear policies regarding time keeping and demonstrating that he knew how to use the KRONOS system to report his hours worked.  Given Nieddu's erratic reporting record, it appears that he did not follow any set practice, but randomly chose not to satisfy his reporting obligations. *See* #43-2, Christensen Affid., Ex. D; #43-1, Yanez Affid., ¶ 7.

Nieddu claims that his supervisors knew or should have known that he was working off the clock.  Pl.'s Dep., 92:18-23 (claiming

unidentified employees at the front desk knew he worked off-the-clock hours).  But Nieddu admitted during his deposition that LTF supervisors are restricted in their ability to track work hours and related hours recorded for each individual hair stylist from one day to the next.  *Id.* at 103:4-104:25 (conceding his supervisor's "weren't tracking any one" on a day-to-day basis because they were "in and out" of the salon area and frequently distracted by matters that needed to be resolved).  Moreover hair stylists' schedules and duties varied from day to day, sometimes dramatically, as decided by the Department Head, based on business need (developing clients, educating clients on products, services and treatments, cleaning, administrative tasks, and safety concerns, or even off-the-clock down time), stylists' productivity levels, etc.  #43-1; Yanez Affid. at ¶¶ 4,7.  When Nieddu was asked during his deposition how his supervisors would know if he was punched in or punched out, he responded, "They wouldn't know it. . . . . Because they didn't have time to look[] for this and that."  81:4-82:11.

In *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972), the Fifth Circuit held that as employee is estopped from asserting that he worked more hours than those reported in his time sheet unless "the employer knew or had reason to believe that the reported information was inaccurate."  So, therefore, should Nieddu be estopped from claiming minimum wage and/or overtime violations here because LTF had reasonable time-reporting policies

-29-

and procedures in place and had no actual or constructive knowledge that Nieddu deliberately chose not to follow them, argues LTF. *See, e.g., White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012)("Under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow the established process.")(affirming summary judgment in favor of hospital on nurse's claim for unpaid time for meal breaks where the hospital had established a system to compensate employees for missed meal breaks, but the nurse failed to report her time via the hospital's established procedure."), *cert. denied*, 134 S. Ct. 296 (2013).  In order to receive his proper pay, Plaintiff had to record all hours that he worked.

Nieddu has provided no evidence showing that he was prevented from using LTF's clear policies prohibiting off-the-clock work and falsification of time records.  LTF was entitled to rely on Nieddu to comply with LTF's timekeeping policies and to assume that he was not falsifying his time worked.  *See Von Friewalde v. Boeing Aerospace Ops., Inc.*, 339 Fed. Appx. 448, at *8 (5th Cir. Aug. 4, 2009)("[A]n employee has a duty to notify his employer when he is working extra hours. . . . .[W]e have expressly rejected the notion that an employer does not have the right to require an employee to adhere to its procedures for claiming overtime. [citations omitted])", *citing Newton v. City of Henderson*, 47 F.3d 746, 748-50

(5th Cir. 1995)(rejecting claim for alleged unpaid overtime where defendant "established specific procedures to be followed in order to receive payment for overtime," and plaintiff "ignored the procedures."). *In accord Millington v. Morrow County Bd. of Comm'rs*, No. 2:06-cv-347, 2007 WL 2908817, at *10 (S.D. Ohio Oct. 4, 2007)("[I]t was reasonable for the employer to rely on the time sheets submitted by the employee for payroll purposes where there is no evidence that the employer encouraged workers to falsely report their hours."); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)(affirming summary judgment for the employer where employee turned in time sheets that did not include overtime hours and did not show that the employer should have known that the employee worked more hours than those claimed on his time sheet, emphasizing that "where an employer has no knowledge that an employee is engaging in overtime work and the employee fails to notify the employer . . . the employer's failure to pay for the overtime hours is not a violation of § 207."); *White v. Baptist Memorial*, 699 F.3d at 876 ("Under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process.  When an employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the

-31-

FLSA.[citations omitted]").

## Nieddu's Response in Opposition (#46)

Nieddu insists that LTF must show that it accurately tracked its employees' work hours and cannot argue that its employees bear the burden of keeping such records nor shift its duty to its employees to keep accurate records of their work hours in violation of the FLSA, 29 U.S.C. § 211(c). *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959)("The obligation [to pay overtime under the FLSA] is the employer's and it is absolute. He cannot discharge it by attempting to transfer his statutory burdens of accurate record keeping, 29 U.S.C. § 211(c), and of appropriate payments to the employee. The employer at its peril . . . had to keep track of the amount of overtime worked by those of its employees . . . . [citation omitted]").[10]  *See also Goldberg v. Cockrell*, 303 F.2d 811, 812 n.1 (5th Cir. 1963)("'[W]hile there is nothing to prevent an employer from delegating to his employees the

---

[10] In its reply (#47 at pp. 2-3), LTF insists that in relying on this 50-year-old case, Nieddu ignores the Fifth Circuit's long standing rule that employees are estopped from claiming that they worked more hours than those reported in their time sheets unless the employer knew or had reason to believe that the reported information was inaccurate, a rule consistent with the holding of *White v. Baptist Memorial. See, e.g., Newton v. City of Henderson*, 47 F.3d at 748-49; *Brumbelow*, 462 F.2d at 1327 (employees are estopped from claiming that they worked more hours than they reported unless "the employer knew or had reason to believe that the reported information was inaccurate."). Employees may not impede their employer's ability to comply with the FLSA by disregarding the employer's clear policies for overtime pay.

duty of keeping a record of their hours, the employer does so at his peril.  He cannot escape the record keeping provisions of the Act by delegating that duty to his employees.'"). LTF failed to track hours worked by Nieddu and therefore failed to compensate him pursuant to § 7(i) and or the FLSA's minimum wage requirement.

Nieddu contends that LTF's system failed because Department Head Fuentes instructed Nieddu not to log in his hours worked because commissioned hair stylists did not have to.  As LTF's corporate representative Liza Shiffman testified, department heads are responsible for ensuring that employees' hours are logged correctly; thus Fuentes is responsible for the denial of Nieddu's wages.  #46-2, Ex. B, Liza Shiffman Deposition, 90:17-23. Fuentes's failure to comply with FLSA is a fact, not an allegation, and it exposes LTF to liability.  Plaintiff intentionally violated LTF's clock-in, clock-out policy, yet LTF has not shown any evidence of any disciplinary action taken against Nieddu for his failure.  In contrast Fuentes, who was mainly responsible for the failure to track Nieddu's working hours, was terminated along with other managers who were charged with overseeing Nieddu throughout his employment at LTF.

Nieddu insists LTF had actual notice that he performed work off-the-clock.  LTF supervisors saw him arrive a work most of the time and were aware he was present.  Sometime Nieddu would check in with his supervisor when he arrived.  LTF managers came in and out

of Nieddu's workplace and saw him.  Fuentes had actual knowledge that Nieddu was working but Fuentes failed to track Nieddu's work hours and submit the necessary paperwork for LTF to compensate Nieddu for off-the-clock work.  Since LTF's managers, including Fuentes, are agents of LTF, LTF has exposure to liability under the FLSA based on their conduct.

Moreover, argues Nieddu, LTF had constructive knowledge that Plaintiff performed work off-the-clock, but ignored "red flags" (e.g., pay period documentation evidencing that Nieddu was working but not receiving compensation, Exhibits D-O[11]) that indicated the systematic breakdown of LTF's compensation system or off-the-clock problem.  LTF simply passed its obligation to keep its employee's time worked to its employees, "stuck its head in the sand," and ignored the problem.  Thus LTF's time records are inaccurate.  LTF had numerous records in its possession that if it had done even a little due diligence it would have learned of Plaintiff's off-the-clock work.  Under the *Mt. Clemens Pottery* test, Nieddu can prove his damages by "just and reasonable inference."  328 U.S. at 687 *See also id*. at 388 ("The employer cannot be heard to complain that

---

[11] For example, Exhibit D is Nieddu's Pay stub and time card for the pay period of January 1-January 15, 2011.  It shows zero hours worked, but commissions from service generating revenue for which Plaintiff had to perform an actual service, such as hair coloring or cutting.  Another document (Ex. D, Bates stamped LTF00000401-LTF00000405) available to LTF management called "Schedules from Shortcuts" shows that Nieddu was at minimum scheduled to provide twenty services to clients during this pay period.

the damages lack the exactness and precision of measurement that
would be possible had he kept records in accordance with the
[FLSA]. . . . Nor is such a result to be condemned by the rule that
precludes the recovery of certain and speculative damages."); 
*Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 13 (D.D.C.
2010)("When assessing damages under the *Mt. Clemens Pottery*
standard, a court may draw inferences from oral testimony, sworn
declarations, and whatever relevant documentary evidence a
plaintiff is able to provide."); *Beliz v. W.H. McLeod & Sons
Packing Co.*, 765 F.2d 1317, 1330 (5th Cir. 1985)(holding that where
the employer failed to keep records of work performed, workers'
"admittedly inexact or approximate evidence" was sufficient to meet
their burden of showing that they performed work not properly
compensated for a *prima facie* case; if the employee makes a
credible showing, the burden then shifts to the employer to come
forward with evidence to negate the reasonableness of the inference
and "the employer cannot be heard to complain that the damages lack
the exactness and precision of measurement that would be possible
had he kept records in accordance with the requirements of" the
Act).  In Exhibit D, the pay period where Plaintiff received gross
pay of $388.58 and worked an average of 54 hours each week would
result in a sub minimum hourly wage rate in violation of the FLSA's
§ 7(i) exemption, which requires that a commission-paid employee
receive one and a half time his hourly rate for every hour worked

when working overtime in a particular week.[12]  Furthermore, LTF had actual and/or constructive notice that Nieddu was not being properly compensated because LTF kept track of the specific service(s) performed by each of its hair stylists per customer so it could assess Shop Charges.  Ex. P.  The law imposes on LTF a duty to conduct due diligence; had LTF satisfied that duty, insists Nieddu, it would have discovered this documentation which showed constructively what it actually knew, i.e, that Nieddu was performing work which LTF's time-keeping system was not capturing.

Nieddu also contends that by establishing a policy that depended on the department heads to oversee the entry of work hours, LTF prevented Nieddu from recording his hours accurately since he knew that his efforts would be futile and that even if his working was observed by his department head, that department head would refuse to track Nieddu's hours properly.  Nieddu further charges that Fuentes instructed him and prevented him from using LTF's time-keeping system.

LTF has argued that where employees sign off on or enter inaccurate information on their timesheets, *Mt. Clemens Pottery* does not apply.  Nieddu disagrees.  FLSA rights cannot be waived by

---

[12] $388.58/54 = $7.20, which is lower that the federally mandated minimum wage rate of $7.25.  If one assumes Nieddu received $194.29 each of the two weeks in that pay period, his hourly rate would be $3.60 ($194/54).  Both methods of calculating result in a figure that is noncompliant with FLSA's § 7(i) exemption.

contract or agreement. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740-44 (1981). Moreover, "once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours. Accordingly, the fact that an employee is required to submit his own timesheets does not necessarily preclude him from invoking [*Mt. Clemens Pottery*'s lenient "just and reasonable inference"] standard where those records appear to be incomplete or inaccurate." *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 363 (2d Cir. 2011). Moreover, "where the employee's falsifications were carried out at the instruction of the employer or the employer's agents, the employer cannot be exonerated by the fact that the employee physically entered the erroneous hours into the timesheets." *Id.* Nieddu also asserts that Nieddu's failure to complain to LTF about timekeeping or payment failures bars recovery or utilization of the *Mt. Clemens Pottery* test. Even where the employee willingly rejects the protections of the FLSA, those protections remain in effect. *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985).

### LTF's Reply (#47)

In arguing that LTF had both actual and constructive knowledge that Nieddu was working overtime hours, Nieddu fails to address the undisputed evidence, including his own testimony, that his

-37-

supervisors were unable to track employee hours, no less know if and when he was working hours beyond his regularly scheduled shifts.  Moreover, Nieddu has not alleged facts showing that LTF knew or should have known about Nieddu's unrecorded work time.  Nor does Nieddu address LTF's contention that it had no duty to investigate Nieddu's time records where there was no indication that Nieddu was working beyond normal hours.

In a final effort to manufacture a factual dispute, LTF contends that Nieddu grossly mischaracterizes the evidence.  He now asserts that Fuentes prevented him from following LTF's unambiguous time reporting procedures by threatening him with termination. Plaintiff's own deposition testimony shows that, at most, Fuentes told him "not to worry" about clocking in or out because he was a commissioned employee, certainly not a mandate not to report his work hours.  This language does not threaten potential discharge or otherwise threaten something that would dissuade Nieddu from reporting his time.  Nieddu's testimony also demonstrates that he was fully aware that LTF's policies clearly and unambiguously stated that commissioned employees must record all hours worked to ensure they receive proper payment under the FLSA.  Nieddu's time records indicate that he clocked in and out of work during the period that he reported to Fuentes, reflecting that he knew he should.  No reasonable jury could conclude that LTF prevented or discouraged Nieddu from correctly reporting his work hours.

-38-

LTF contends that the issue here is not whether Nieddu can prove how many overtime hours he worked, but whether LTF knew or should have known that Nieddu was working unrecorded hours and whether LTF satisfied the exemption requirements of the FLSA's section 7(i).  LTF insists what Nieddu tries to pass off as "fact" is wholly unsupported by credible evidence and that his overview is "a confusing conglomeration of legal conclusions, argument, and inaccurate and unsubstantiated assertions that have no reasonable foundation in the record evidence."  #47 at p. 4.

LTF asserts that the undisputed evidence demonstrates that Nieddu must be estopped from claiming minimum wage and/or overtime violations under the laws.  #43 at pp. 6-10, 19-25.  LTF had established reasonable time-reporting policies and procedures, and Nieddu has failed to show that LTF had actual or constructive knowledge that Nieddu deliberately chose not to follow those policies and procedures.  *Id., citing White v. Baptist Memorial*, 699 F.3d at 878.  Nieddu's effort to characterize his factual allegations as legal conclusions, which do not comply with mandatory authority controlling the issues here, should not be permitted.

To the extent that LTF has a burden to ensure that no uncompensated overtime was allowed, the evidence demonstrates that in addition to establishing time recording policies and training its employees that they must comply with them, LTF adopted the

-39-

KRONOS Missed Punches/Editing Punches policy requiring Department Heads to review the time records of their individual direct reports at least every other day for errors or inaccuracies.  Weber Affid. ¶ 10 and Ex. B; Christensen Affid. Ex. E (showing that LTF's Department Heads did review and sign off on Nieddu's time records). LTF also created a procedure for employees to correct reported errors and inaccuracies by filling out a KRONOS Exception Sheet and giving it to their Department Head.  Weber Affid. ¶ 10 & Ex. B. There is also evidence that LTF from time to time sent notices to employees reminding them of the importance of accurately and completely recording all time worked.  *Id.,* at ¶¶ 1-12 & Ex. D. The evidence further proves that LTF put those policies into practice.

The record undermines any claim that Fuentes or any other Department Head ever threatened Nieddu with termination if he recorded his work hours or that Nieddu was otherwise prevented from reporting his time worked.  As noted his own deposition testimony was that only Fuentes, out of the six different supervisors he had during his tenure, allegedly told him "not to worry" about clocking in and clocking out because he was a commissioned employee.  #43-2, Ex. A,  pp. 88-90.  Nieddu admits that he knew LTF's policies unambiguously required employees to record all hours worked to ensure that they receive proper payment under the FLSA.  #43 at pp. 609.  LTF has summarized the terms regarding its time recording

-40-

expectations in its initial brief, #43 at pp. 24 & 25, which Plaintiff did not dispute (#43-2, Ex. A, Pl.'s Dep. 90:4-16; 109:12-19).   In addition, proper timekeeping was an express, specific requirement of Plaintiff's Stylist job. #43, Ex. 1, Yanez Affid. at ¶ 5 and Ex. A (LTF's Stylist Position Description lists "[p]unches in and out of Kronos" and "[a]dheres to company policies and procedures" as specific requirements).   Nieddu's own time records undermine Nieddu's allegation that he thought he would be terminated if he disobeyed Fuentes' purported  mandate that he not record his time:   Nieddu continued to clock in and out of work during the period that he reported to Fuentes.  #43 and pp. 10-12. His time records as a whole show that he did not follow any set pattern or practice of time keeping no matter who was his Department Head at the time.

Although Nieddu asserts that "Fuentes intentionally failed to track Plaintiff's work hours" (#46 at p. 7), as if Fuentes had a responsibility to do so, the undisputed evidence shows this claim is untrue.   Nieddu cited the affidavit of LTF's Corporate Representative, Liza Shiffman, stating that Fuentes "dropped the ball" in tracking Nieddu's work hours (#46-2, Ex. B at 110:10-23). In actuality Fuentes was not responsible for tracking and recording Nieddu's work hours; on the other hand Fuentes did have a duty under LTF's "KRONOS Missed Punches/Editing Punches" policy to review and approve the time cards of those whom he supervised (#43

-41-

at p. 8), but he failed to do so in Nieddu's case (Shiffman Dep. at 109:20-110:23). In that failure to approve Nieddu's time cards, and thus Nieddu's pay, for that period, Fuentes did not even look at Nieddu's time sheets for the pay periods and therefore could not have gained any actual knowledge that Plaintiff worked hours that he did not report. Nieddu also claims that LTF had actual knowledge that he worked "off-the-clock" because (1) his supervisors saw him arrive at work most of the time, (2) they were "well aware he was present at work," (3) Nieddu would sometimes "check in with his supervisor" when he arrived at work, and (4) his supervisors saw him perform work when they came in and out of his work area. LTF points to its initial brief, which set out substantial, undisputed evidence that demonstrates that Nieddu's supervisors were severely limited in their ability to track any hair stylist's work and related hours on a day-to-day basis. Nieddu's deposition testimony also provides evidence that his supervisors were not tracking such activities, were frequently distracted, and generally did not work the same hours as he did. Nieddu's Dep., #43-2, Ex. A. Moreover he recognized that even if his supervisors could have observed the work performed by each hair stylist each day, they would have had no means of knowing if a stylist was on or off the clock while performing work-related tasks. *Id*. at 81:4-92:11. Thus Nieddu's conclusory and/or speculative claim that LTF had actual knowledge fails.

-42-

So does Nieddu's claim that LTF had constructive knowledge that Nieddu worked unreported hours based on his appointment schedules and his time records, which he characterizes as "red flags" alerting LTF to his overtime work.  LTF has shown that it had no duty to investigate and/or evaluate Nieddu's time records, appointment schedules, work schedules and other documents to determine whether Nieddu was reporting his overtime performance when there was no indication elsewhere that he was working beyond normal hours.  #43 at pp. 19-26.  In its Opinion and Order of September 30, this Court pointed out, "The Fifth Circuit has held that where an employer requires employees to complete time sheets, the employer has no reason to investigate whether the employees are filling them out when there is no reason to suspect they are not.  #42 at p. 12, *citing Newton*, 47 F.3d at 749 (holding that as a matter of law access to information about all the activities of an employee does not constitute constructive knowledge that the employee was working overtime.).

In sum, LTF claims that it is entitled to summary judgment on all claims that Nieddu has asserted against LTF.

## Court's Decision

After careful review of the briefs, the summary judgment evidence and the law, the Court concurs with LTF that it is entitled to summary judgment on all Nieddu's claims under 29 U.S.C. §§ 206(a) and 207(a) against it.

The evidence establishes that Nieddu was paid minimum wage for each regular hour he worked because, as a matter of law, LTF's deductions for Shop Charges before the calculation of commissions were lawful. *Parker v. Nutrisystem, Inc.*, 620 F.3d at 283; *Yi*, 480 F.3d at 509-10.

As for overtime compensation, Nieddu has failed to show that LTF had actual or constructive knowledge that Nieddu was working extra hours or hours overtime or that Nieddu had failed to report these hours as required by LTF's numerous policies and requirements. Nieddu not only failed to prove that he worked hours for which he was not paid and of which LTF has no adequate record because Nieddu prevented LTF from maintaining accurate records of Nieddu's work hours by failing to report them in violations of LTF's clear policies, of which Nieddu knew because he sometimes complied with them, but he has not shown that LTF knew or should have known, i.e., had actual or constructive knowledge, that Nieddu did so. There is no showing that LTF had actual knowledge that Nieddu was not reporting overtime hours. Moreover Nieddu did not establish constructive knowledge based on his argument that LTF had access to other records about him. *Newton*, 47 F.3d at 749 (holding that as a matter of law access to information about all the activities of an employee does not constitute constructive knowledge that the employee was working overtime.). Because LTF had established specific procedures for claiming overtime

compensation, even though Nieddu at times ignored them, LTF had a right to rely on them. *Van Friewald*, 339 Fed. Appx. at *8; *Newton*, 47 F.3d at 748-50. Therefore LTF's failure pay any claimed overtime compensation for hours allegedly worked in excess of forty hours per week did not violate the FLSA. *Von Friewalde*, 47 F.3d at 748; *Newton*, 47 F.3d at 748.

Accordingly, the Court

ORDERS that LTF's motion for summary judgment (#43) is GRANTED. A final judgment will issue by separate order.

**SIGNED** at Houston, Texas, this _12th_ day of _August_, 2014.

 

 

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-45-